UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CANAL AIR, LLC,

       Plaintiff,

v.

WILLIAM B. MCCARDELL, and MCCARDELL    Case No. 11-11081
PROPERTIES, INC.,    Honorable Julian Abele Cook, Jr.

       Defendants.

ORDER

This is a case in which the Defendants, William B. McCardell and McCardell Properties (collectively referred to as "McCardell"), have been accused by the Plaintiff, Canal Air, of defaulting on their obligations under a lease agreement. Currently pending before the Court is Canal Air's motion for summary judgment, as well as McCardell's cross motion for summary judgment.

I.

Canal Air is a Delaware corporation that provides leasing and financing for aircraft. William B. McCardell is the president of McCardell Properties - a Michigan based corporation.

On August 29, 2008, the corporate parties in this case reached an agreement wherein Canal Air agreed to (1) purchase an aircraft from McCardell Properties for $2,356,000, and (2) return the same aircraft as a leased vehicle. On the same date, McCardell signed and delivered a document in which he guaranteed the commitment of McCardell Properties to satisfy its obligations to Canal Air under their contract. As further evidence of its commitment to the terms of the lease agreement

(which was to begin on September 8, 2008 and run for three years thereafter until September 8, 2011), McCardell Properties (1) deposited a $365,000 security deposit with Canal Air, and (2) committed itself to make monthly payments of $14,624.76 to Canal Air. This lawsuit has arisen because, according to Canal Air, McCardell Properties defaulted in its fiscal obligations on June 2, 2010. Around the same time, McCardell Properties voluntarily relinquished its possession of the leased aircraft to Canal Air. Canal Air determined it was in their best interests to sell the aircraft, and on December 2, 2010, Canal Air mailed a letter notifying McCardell of its intent to sell. The letter was received on December 7, 2010, informing McCardell of the pending sale on December 8, 2010, for $1,565,000. Ultimately the sale did not take place on December 8, 2010 as planned, but was completed on December 30, 2010. Canal Air now seeks $874,279.30 in damages as the deficiency plus attorneys' fees and costs.

II.

Both Canal Air and McCardell have moved for summary judgment, pursuant to Fed. R. Civ. P. 56(c). The purpose of the summary judgment rule, as reflected by Federal Rule of Civil Procedure 56, "is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The entry of a summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties." *Aqua Grp., LLC v. Fed. Ins. Co.*, 620 F. Supp. 2d 816, 819 (E.D. Mich. 2009) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). In order for a dispute to be genuine, it must contain evidence upon which a trier

of the facts could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). When assessing a request for the entry of a summary judgment, a court "must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The entry of a summary judgment is appropriate if the nonmoving party fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Thus, the moving party has the initial obligation of identifying those portions of the record that demonstrate the absence of any genuine issue of a material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *see also Anderson*, 477 U.S. at 256. The presence or the absence of a genuinely disputed material fact must be established by (1) a specific reference to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or (2) a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

### III.

Pursuant to the lease agreement, New York law governs this litigation. (Lease Agreement, §20(b)). The parties dispute which article of the New York Commercial Code applies. Canal Air

3

submits that Article 2 applies and that McCardell waived his right to notice of the sale and a commercially reasonable disposition. N.Y. Uniform Commercial Code § 2-A-107. McCardell submits that Article 9 applies and that these defenses cannot be waived. N.Y. Uniform Commercial Code § 9-602.

The Court must determine which article of the Commercial Code applies. Article 2 applies if the agreement constitutes a "true lease." N.Y. Uniform Commercial Code § 2-A-102. Article 9 applies only if the agreement forms a security interest in personal property. N.Y. Uniform Commercial Code § 9-109(a)(1). Evidence of the parties' intent is found within the lease agreement at section 20(g), which states, "Lessor and Lessee intend that this Lease constitutes a true 'lease' and a 'finance lease' as such terms are defined in Article 2A, and not a sale or retention of a security interest." The language clearly indicates that the parties intended to the agreement to be governed by Article 2. Further, New York courts have held that similar agreements were leases subject to Article 2. *See, e.g. General Elec. Capital Corp., LLC v. G. Howard Associates, Inc.*, No. 09-CV-3923, 2010 WL 2346296, at *4 (E.D.N.Y. May 18, 2010).

Under Article 2, "[a]ny claim or right arising out of an alleged default or breach of warranty may be discharged in whole or in part without consideration by a written waiver or renunciation signed and delivered by the aggrieved party." N.Y. Uniform Commercial Code § 2-A-107. Therefore, McCardell validly waived his right to a reasonable notice of the sale and the requirement for a commercially reasonable sale in the lease agreement. (Lease Agreement § 20(g)). Since Article 2 allows for the waiver of those rights, the Court need not determine whether reasonable notice was received or whether the sale of the aircraft was commercially reasonable.

IV.

Canal Air requests $874,279.30 in liquidated damages pursuant to the lease agreement as well as attorneys' fees and costs. McCardell submits that the liquidated damages clause is unenforceable because it amounts to a penalty. New York courts have consistently held that liquidated damages clauses are enforceable as long as "the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise determination." *Leasing Service Corp. v. Justice*, 673 F.2d 70, 73 (2d Cir. 1982). "Courts interpret the liquidated damages clause in light of the potential loss determinable at the date of the contract's execution, not at the time of breach." *General Elec. Capital Corp*, 2010 WL 2346296, at *4 (E.D.N.Y. May 18, 2010). The liquidated damages must not be unconscionable. *Id.* The liquidated damages section is enforceable because the damages would have been difficult to determine at the time the lease was decided, and it is not unconscionable.

Alternatively, McCardell argues that the 20 monthly lease payments that me made, amounting to $292,495.00, should be deducted from the liquidated damages. However, Canal Air expected to receive the monthly lease payments throughout the period of the lease agreement, as well as having the aircraft returned at the end of the lease. (Lease Agreement Annex B). McCardell's monthly payments were not payments for the purchase of the aircraft, but rather payments to use the aircraft. Therefore, it is appropriate for Canal Air to recover the stipulated damages as determined by the Lease Agreement. The default occurred in the 22nd month which, according to the Lease Agreement, amounts to $2,428,925.95 in stipulated damages. (Lease Agreement Annex E). However, adjustments must be applied for the security deposit ($365,000.00) and Canal Air's sale of the aircraft ($1,565,000.00). The Court finds that, after adjustments, McCardell is responsible for $498,925.95 plus $143,471.51 in interest from the point

of default until the filing of this lawsuit.

Finally, McCardell contends that Canal Air's expenses when selling the aircraft were not reasonable and that Canal Air has not met its burden of proving reasonableness. However, McCardell relies on Article 9 of the New York Commercial Code, which is not applicable to this contract as determined above. Section 12(c) of the Lease Agreement states that the Lessee will be liable for "all of Lessor's costs, charges and expenses incurred in enforcing its rights under this Lease or in taking, removing, holding, repairing, selling, leasing or otherwise disposing of the Aircraft." Canal Air provided evidence showing that their expenses involved refurbishing the aircraft in preparation of resale and replacing a swivel chair. *See id.* at \*5. Under the lease agreement, these expenses are to be paid by McCardell. The Court holds that the refurbishment performed on the aircraft before the sale is an acceptable cost under the lease agreement. Therefore, McCardell is responsible for the $231,881.83.

The Court notes that Canal Air has requested "reasonable legal fees and disbursements" pursuant to the lease agreement. (Lease Agreement § 12(b)(x)). As a general rule, attorneys' fees are incidents of litigation and should not be awarded unless authorized by an agreement between the parties, statute, or court rule. *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491 (N.Y. 1989). Under New York law, provisions providing for attorneys' fees are enforceable as long as the provision is unmistakably clear. *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 21 (2d Cir. 1996). However, the Court also recognizes that New York courts are hesitant to award attorneys' fees. *See Hooper*, 74 N.Y.2d at 491.

Canal Air has not filed documentation to support its request for attorneys' fees. If Canal Air wishes to recover legal fees and costs, it must file a motion within fourteen days of the date of

6

this Order. McCardell may file a response within seven days.

For the reasons stated above, Canal Air's motion for summary judgment is granted. (ECF 38). McCardell's motion for summary judgment is denied. (ECF 35). Canal Air is awarded $874,279.29.

IT IS SO ORDERED.


Date: August 21, 2013   			s/Julian Abele Cook, Jr.
						JULIAN ABELE COOK, JR.
						U.S. District Judge


<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on August 21, 2013.

						s/ Kay Doaks
						Case Manager